CORA POPE, APPELLANT, V. RICHARD H. TAPELT, APPELLEE.

50 N. W. 2d 352

Filed December 7, 1951. No. 33053.

*Pilcher & Haney,* for appellant.

*Gross, Welch, Vinardi & Kauffman,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is an action for damages brought by the plaintiff, a pedestrian, who was struck by defendant's automobile while she was crossing a street in the city of Omaha. The jury returned a verdict for the defendant and the plaintiff appeals.

The plaintiff, Cora Pope, was a housewife, age 74 years at the times herein mentioned. On August 4, 1948, she started by streetcar to do some shopping. She alighted from the streetcar about 3:30 p. m., on Farnam Street just west of Turner Boulevard and proceeded on foot from that point. The day was bright and the streets dry. She testified that she walked east until she arrived at a point on the south side of Farnam Street opposite a traffic light on the north side of Farnam Street. She testified. that as she started across Farnam Street the traffic light was green and that she started across after looking to the east and west for oncoming traffic. When she got about half way across she saw defendant's car going west on the north side of Farnam Street. After looking to the east a second time she saw defendant's car was about a car length from her. When she was

about half way between the north streetcar track and the north curb of Farnam Street she was struck and injured. She said she moved faster after seeing defendant's car and that she thought she had time to cross ahead of it. She testified that she remembered nothing thereafter until she regained consciousness in the hospital the next evening.

Plaintiff called one Dennis Radford as a witness. He testified that he was driving west immediately behind the defendant's car immediately before and at the time of the accident. He testified that he was driving about two or three car lengths back and to the left of defendant's car, that both cars were traveling about 20 miles an hour, and that he saw plaintiff crossing the street until she was struck by defendant's car. He said defendant's car did not swerve, but that it did stop almost immediately after the accident. He heard no horn sound and observed no application of brakes by the defendant before plaintiff was struck. He said he was moving west on a green light and, consequently, he assumed plaintiff was walking against a red light.

Defendant called as witnesses Mrs. Allen A. Blanchard and her daughter, Mrs. Philip J. Pospisal, who testified that they were standing on the southeast corner of the intersection of Farnam Street and Turner Boulevard waiting for a green light when the accident happened. They say that plaintiff crossed Turner Boulevard from west to east on a green light and turned northeast across Farnam Street on a red light. They testified that she waited for a streetcar going east to pass in front of her and then proceeded until she was struck by defendant's car. They stated that they saw defendant's car and the one following it driven by Radford, both of which were traveling slowly.

Defendant testified that he was proceeding west on Farnam Street prior to the accident. He says he stopped for a traffic light approximately 100 feet east of the point where the accident occurred. He then moved west-

ward on the north side of Farnam Street at 10 or 12 miles an hour. He met a streetcar coming from the west at a point east of the crosswalk near where plaintiff was injured. He testified that when he saw the plaintiff he applied his brakes and swerved his car approximately a foot and a half to the right. He testified that plaintiff was hurrying across the street and was struck by his left front fender and was thrown to the pavement immediately to the left of his left front wheel. He testified also that he had new tires on his car, that the brakes were in good working order, and that he was able to stop in a distance of two and one-half feet.

This evidence clearly raises issues which are for the jury to determine. The jury returned a verdict for the defendant. The evidence is ample to sustain the verdict. Plaintiff's assignment of error that the verdict is contrary to the weight of the evidence and is manifestly wrong is without merit.

Plaintiff urges that the trial court erred in failing to instruct the jury on the last clear chance doctrine. It is plain that the elements required to be present to warrant the giving of an instruction on last clear chance are not shown in the record before us. Whitehouse v. Thompson, 150 Neb. 370, 34 N. W. 2d 385. This issue is controlled by Carter v. Zdan, 151 Neb. 185, 36 N. W. 2d 781, wherein the court, in denying the applicability of the last clear chance doctrine, said: "Thus on appellant's theory it must be said that decedent negligently placed himself in a position of peril immediately before this accident. Could he have escaped by the exercise of ordinary care? Clearly he could have stopped or, if need appeared, stepped back out of the path of the oncoming automobile which he could have seen if he had exercised an appropriate degree of care for his own safety." The foregoing has equal application to the plaintiff in the case before us. There was no error in refusing an instruction on last clear chance.

Plaintiff asserts that the trial court erred in not grant-

ing a mistrial after both parties moved therefor. The record shows that plaintiff in cross-examining one of defendant's witnesses brought out the fact that she had been interviewed previous to the trial by defendant's insurance agent. Defendant moved for a mistrial, which the court took under advisement. Plaintiff made no objection to the statement at the time, but at a later time in the trial sought to join in the motion. Defendant thereupon withdrew his motion and in open court expressly waived any error in the reception of the evidence constituting the basis for the motion for a mistrial. Prejudice, if any, in the admission of the evidence was to the disadvantage of the defendant. Defendant's withdrawal of his motion for a mistrial, and his waiver of any error in the admission of the evidence affording the basis for the motion, has the effect of eliminating a claim of error emanating therefrom. The trial could properly continue as if no objection had been made to the evidence, or a motion for a mistrial had not been made. Plaintiff's motion for a mistrial came too late, assuming that the evidence upon which it was based was prejudicial to her.

The plaintiff assigns as error the failure of the trial court to grant a new trial for misconduct of the jury. The record shows the following situation: (1) During a recess of the trial a juror testified that another juror visited with the witness Mrs. Pospisal and advised her that if she became nervous and confused on the witness stand she should answer "I don't know" to each question asked; (2) one or more jurors stated, during the deliberations of the jury, that to give a verdict for plaintiff would result in defendant's losing his driver's license and the ability to procure insurance in the future; and (3) during a recess of the court a juror testified that another member of the jury stated to several jurors that she had asked the defendant the amount he was being sued for and that defendant had replied he was being sued for $25,000, that he had $10,000 insurance and that

he would be stuck for the $15,000, that his insurance company had offered plaintiff $10,000, that plaintiff had refused the offer, and that during the deliberations of the jury one or more jurors remarked that they had no sympathy for plaintiff because she had refused the $10,000 settlement.

The law applicable to a situation such as is here presented has been clearly stated by this court. It is its application to a given situation that ofttimes becomes difficult. It is a general rule that the affidavits or testimony of jurors are not admissible to impeach or avoid their verdict in respect to matters which inhere in the verdict itself. Scherz v. Platte Valley Public Power & Irrigation Dist., 151 Neb. 415, 37 N. W. 2d 721. A verdict must be based upon the evidence introduced in the case. The trial court passes upon the competency, materiality, and relevancy of the evidence offered to sustain or defeat the issues raised by the pleadings. The evidence must be given under oath with the right of the opposing party to test it by cross-examination, or to meet it by other evidence. If improper and prejudicial evidence is otherwise placed before and considered by the jury, the injured party is denied his right to a fair and impartial trial. Under such circumstances it is reversible error. The misconduct of the jury must relate to a material point in dispute. It must be of such a nature that it tended to prejudice the complaining party. It is also the rule that when a motion for a new trial on the ground of misconduct of the jury requires a consideration of conflicting evidence, the findings of the trial court thereon will not ordinarily be disturbed on appeal unless clearly wrong. Greenberg v. Fireman's Fund Ins. Co., 150 Neb. 695, 35 N. W. 2d 772.

As to the first point (1), the evidence is in conflict. The juror involved denies that she ever made such a statement to the witness, although she states she told other jurors that if she were a witness and became nervous and confused, she would answer "I don't know" to

questions put to her. The record discloses no prejudice arose from this source. The finding of the trial court thereon is sustained by evidence and will not be disturbed.

As to point (2), we think the mention of the possibility that defendant might be deprived of his driver's license, if found by the jury that he was negligent, is a matter that inheres in the verdict. This is described in Scherz v. Platte Valley Public Power & Irrigation Dist., *supra*, as a matter of opinion, supposition, or argument, and then held to be a matter which inhered in the verdict. The statements made as to the probability that defendant would be unable to obtain insurance in the future falls within the same rule. We find no error in the court's ruling denying a new trial on this ground.

As to the alleged misconduct which we have designated as point (3); it is clear from the evidence that information got to the jury from some source that defendant was sued for $25,000, that he had $10,000 insurance and that he would have to pay any judgment above that amount, that the insurance company offered to pay the plaintiff $10,000, and that she refused to accept it. Clearly, the foregoing could not have been properly admitted in evidence at the trial over objection. Consequently it was improperly placed before the jury by one of its members, whatever the source of the information may have been. We fail, however, to see where the plaintiff was prejudiced. That insurance was involved had already crept into the case on the cross-examination of a witness for the defendant. It would seem that a more specific statement of the insurance alleged to have been involved, with the further statement that plaintiff had been offered and had refused a $10,000 settlement, was evidence favorable to the plaintiff. It has always been considered by the courts, and we think correctly so, that it was prejudicial to the defendant and his insurance carrier for the jury to be apprized of the fact that defendant carried insurance. The alleged offer to settle

for $10,000 likewise militates to the advantage of the plaintiff. It affords no basis for a claim of prejudice.

The plaintiff contends that the reported offer to pay $10,000 and its refusal by the plaintiff was prejudicial to the plaintiff in that it made her appear to be greedy and grasping in her efforts to collect for her injuries. The evidence offered to sustain this contention is that of one juror who stated "a number of the jurors remarked that they had no sympathy for Mrs. Pope as she was offered the $10,000 insurance money and had refused it." Eight other jurors were called and they either were silent on the subject or testified that they had no such feeling, that they had made no such statements, and that they had heard no such statement made by any juror. It will be noted that the first juror did not testify that she herself had no sympathy for the plaintiff because of plaintiff's alleged refusal of the $10,000 settlement. This raised a question of fact for the trial court to decide. We cannot say from the record before us that the trial court's finding was not supported by evidence or that it was clearly wrong. The findings of the trial court on this point will not therefore be disturbed.

The errors assigned are without merit and the judgment of the district court is affirmed.

AFFIRMED.